IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CV-716-BR

| | |
|---|---|
| FAYE GORE, Individually and as Executrix of the Estate of WADE MILLER GORE, Deceased, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | O R D E R |
| 3M COMPANY, et al., ) ) | |
| Defendants. ) | |

This matter comes before the court on the motion of defendant John Crane, Inc. ("Defendant") for leave to file a motion for an order governing the release of pathology materials ("Motion for Leave") pursuant to Fed. R. Civ. P. 16(b)(4) [DE-289], and for an order governing the release of pathology materials [DE-291]. Faye Gore ("Plaintiff") opposes the Motion for Leave [DE-296], but does not oppose Defendant's motion for an order governing the release of pathology materials if Defendant's motion for leave is allowed. [DE-297]. Duke University Health System, Inc. ("DUHS"), a non-party to this lawsuit, filed a Motion for Protective Order Governing Release of Pathology Material [DE-294], which Defendant does not oppose, but Defendant requests the proposed protective order be modified with respect to certain language [DE-299]. All matters raised in the motions and briefing are ripe for decision. For the reasons that follow, Defendant's Motion for Leave [DE-289], Defendant's Motion for Order Governing Release of Pathology Materials [DE-291] and DUHS's Motion for Protective Order Governing Release of Pathology Material [DE- 297] are ALLOWED.

## I. DISCUSSION

### A. Motion for Leave

Defendant filed this Motion for Leave to file its motion for order governing release of pathology materials out of time because the discovery deadlines and the time for filing motions set forth in the Scheduling Order have expired. *See* Scheduling Order [DE-158] at ¶ 3; Local Civil Rule 7.1(a). The Scheduling Order entered on September 9, 2016, provided a fact discovery deadline of March 6, 2017, and an expert discovery deadline of June 5, 2017. [DE-158]. Defendant asserts that it began requesting pathology materials from Plaintiff on October 21, 2015, but, despite multiple requests, Plaintiff did not produce any pathology until March 14, 2017—eight days after the close of fact discovery. Def.'s Mem. [DE-290] at 2. By early April 2017, Defendant's expert had reviewed the provided slides and raised questions of causation related to Plaintiff's claims. *Id.* Accordingly, on April 9, 2017, Defendant's counsel inquired about the availability of additional tissue blocks for further testing by Defendant's expert. *Id.* Plaintiff's counsel replied that no such blocks had been provided to Plaintiff. *Id.* DUHS later confirmed to Defendant that such tissue blocks did exist, and, on April 12, 2017, Defendant requested that DUHS release the pathology materials for further testing. *Id.* On May 12, 2017, DUHS informed Defendant that certain conditions had to be met before it could release the pathology materials, advising that, if Plaintiff would consent to the release, DUHS's institutional requirements for release would be met. *Id.* at 3. Plaintiff objected to the release of the pathology materials. *Id.* On July 1, 2017, DUHS's counsel advised Defendant that it would not voluntarily release the pathology materials and, on August 29, 2017, Defendant filed this Motion for Leave to pursue those materials.

A scheduling order may be amended for good cause and with consent from the court. Fed. R. Civ. P. 16(b)(4). The good cause provision of Rule 16(b)(4) does not focus on the prejudice to the non-movant or bad faith of the moving party, but rather on the moving party's diligence. *Dilmar Oil Co. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997); *see also Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) ("'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'") (quoting 6A Charles Alan Wright, Alan R. Miller, and Mary Kay Kane, *Federal Practice and Procedure Civ.* § 1522.2 (3d ed. 2010)); *McDonald v. Marlboro Cty.*, No. 5:12-CV-1725-RBH-KDW, 2013 WL 6580631, at *4 (D.S.C. Dec. 16, 2013) ("[T]he key to the 'good cause' analysis of Rule 16 is whether the party was diligent in seeking to amend."); Fed. R. Civ. P. 16(b), advisory committee's note (1983 amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). The party moving to modify a scheduling order bears the burden of demonstrating the existence of good cause. *United States v. Cochran*, No. 4:12-CV-220-FL, 2014 WL 347426, at *2 (E.D.N.C. Jan. 30, 2014) (citing *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008)). "[T]he scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Velasquez v. Salsas & Beer Restaurant, Inc.*, No. 5:15-CV-146-D, 2016 WL 3339488, at *2 (E.D.N.C. June 13, 2016) (quoting *Gestetner Corp. v. Case Equip. Co.*, 107 F.R.D. 138, 141 (D. Me. 1985)).

Defendant argues that "good cause" exists here because "Defendant did not receive the initial set of pathology materials from Plaintiff's counsel until after the discovery deadline had passed," and therefore could not have known that additional materials were needed until after discovery expired. Def.'s Mem. [DE-290] at 3. Plaintiff contends that her production of the pathology materials was timely because the relevant deadline was the June 5, 2017 expert discovery deadline, and not, as Defendant asserts, the March 6, 2017 fact discovery deadline. Pl.'s Mem. Opp. [DE-296] at 6. The court disagrees with Plaintiff.

"Documents that have a direct bearing on the factual disputes in the case are the subject of fact discovery, which often (as here) concludes before expert discovery so that the parties may rely on a complete factual record to inform their own experts and depose their opponents' experts." *United States v. North East Med. Serv.'s*, No. 10-CV-1904-CW, 2014 WL 7208627, at *5 (N.D. Cal. Dec. 17, 2014) (citing *Sparton Corp. v. United States*, 77 Fed. Cl. 10, 14–15 (2007)). "In other words, expert opinions are to be distinguished from the facts upon which they rely." *Sparton Corp.*, 77 Fed. C. at 15. The analysis in *Arkansas Game & Fish Comm'n v. United States* is helpful in interpreting the distinction between Rule 34(a), providing for the production of documents, and Rule 26(a)(2)(B), (b)(4)(A)–(B), providing for expert discovery. 74 Fed. Cl. 426, 429–30 (2006). In that case, the court considered whether the government's request to enter upon land under Rule 34(a) in order to test and measure conditions using piezometers constituted fact discovery or expert discovery. That court explained:

> The fact discovery addressed by Rule 34(a) differs from the expert discovery covered by Rule 26, which provides that expert discovery will be carried out through mandatory disclosure of the reports of experts expected to testify at trial, and through interrogatories or depositions . . . . In this case, the government's experts might ultimately render opinions based on the data obtained from the piezometers, and those opinions would be subject to the rules relating to expert

4

> discovery. *See* Fed. R. Civ. P. 26(a)(2)(B), (b)(4)(A)–(B). The unevaluated data from the piezometers, however, would not be expert opinions "to be expressed and the basis and reasons therefor," Fed. R. Civ. P. 26(a)(2)(B), even though the results of testing by the piezometers might well become "data or other information considered by the [expert] in forming the opinions," *id.*, or "facts known . . . by an expert." Fed. R. Civ. P. 26(b)(4)(B).

*Arkansas Game & Fish Comm'n*, 74 Fed. Cl. at 429–30. Here, the court likens data testing by piezometers in the *Arkansas Game* case to the pathology materials sought by Defendant in the instant case. Similarly, the pathology slides constitute facts upon which experts may base their opinions at trial, and therefore are distinct from the expert opinions themselves. Accordingly, the court finds the pathology slides were subject to the March 6, 2017 fact discovery deadline and Plaintiff's production of the pathology slides was untimely.

The court finds that "good cause" exists to grant Defendant's Motion for Leave in order to release pathology slides held by DUHS. Defendant has demonstrated diligence in its attempts to timely request the tissue blocks. On March 14, 2017, the pathology was produced by Plaintiff and, by April 9, 2017, Defendant's expert had analyzed the materials and inquired about additional slides in order to perform further tests. From April 2017 through July 2017, Defendant was in contact with both DUHS and Plaintiff regarding a consensual release of the pathology materials. It was not until July 1, 2017, that DUHS's counsel stated it would not voluntarily release the pathology materials to Defendant due to Plaintiff's opposition to the release. Therefore, Defendant's reasonable diligence before the fact discovery deadline would not have resulted in the production of these pathological materials, and accordingly "good cause" exists.

Notwithstanding the late production of the pathology materials, Plaintiff makes two additional arguments regarding Defendant's lack of "good cause" to amend the Scheduling

Order. First, Plaintiff posits that there is a consensus in the scientific community that "a lung tissue digestion is not necessary to render a diagnosis of mesothelioma" and there is an "undeniable link between exposure to asbestos and mesothelioma, universally accepted attribution criteria acknowledge[ing] that 'a history of significant occupational, domestic, or environmental exposure to asbestos will suffice for attribution.'" Pl's Mem. Opp. [DE-296] at 7. Plaintiff also cites Defendant's own pathologist's expert report and deposition, in which Defendant's expert confirmed the decedent's mesothelioma diagnosis through his own analysis of the same pathology slides that Plaintiff's expert analyzed. *Id.* Because Defendant requests these additional tissue blocks in order to perform further tests related to causation, Plaintiff posits that there is no justifiable reason for Defendant to request the pathology slides. The court disagrees. The focus of a "good cause" analysis is the reasonable diligence of the moving party and not its underlying reason for requesting the discovery. Second, Plaintiff argues that, if the court granted Defendant's request, it will cause severe prejudice to "the entire discovery process that has already taken place in this case" and will likely cause the November 27, 2017 trial date to be postponed. *Id.* at 8. The court notes that since Plaintiff's response was filed, the court removed this case from its November 27, 2017 trial calendar in order to rule on pending dispositive motions. [DE-298]. Accordingly, Defendant's Motion for Leave is ALLOWED.

**B. Defendant's Motion for Order Governing Release of Pathology Materials**

Defendant asserts that DUHS is in possession of the requested pathology materials and has informed Defendant that it "would not voluntarily release the pathology materials." Def.'s Mem. Supp. [DE-292] at 1–2. DUHS, in its Motion for Entry of Protective Order Governing Release of Pathology Materials, asserts that its institutional mandate to retain original pathology

6

slides, tissue blocks, and wet tissue pursuant to the Clinical Laboratory Improvement Amendments of 1988 ("CLIA 88") and College of American Pathologists ("CAP") prevents the voluntary release of original material without a consent protective order governing the release. DUHS's Mot. [DE-294] at 6. As such, a court order governing the release of pathology materials is required in order for DUHS to produce the requested pathology materials for Defendant's analysis. Plaintiff does not oppose Defendant's motion. Accordingly, Defendant's Motion for Order Governing Release of Pathology Materials is ALLOWED.

## C. DUHS's Motion for Entry of Protective Order Governing Release of Pathology Materials

DUHS requests that the court enter a protective order in order to "prevent an undue burden that exists given the federal regulations, accreditation requirements, and other North Carolina legislation governing the retention, preservation, and release of original pathology materials." DUHS's Mot. [DE-294] at 4. DUHS contends that federal and state law, as well as accreditation requirements, govern the amount of time that laboratories are required to retain and preserve original pathology—CLIA 88 mandates retention of original tissue blocks for two years from the date of collection, and CAP mandates retention of original tissue blocks for ten years from date of collection. *Id.* at 3. Failure to comply with these regulations and requirements may subject DUHS to sanctions, loss of accreditation, and/or loss of Medicare reimbursement. *Id.* As such, DUHS has proposed a protective order governing the release of the tissue blocks in order to shield it from potential liability under the regulations and requirements.

Defendant does not oppose DUHS's request, but rather requests that DUHS's proposed order be modified to direct that the pathology materials be provided to Defendant, rather than to

7

"the parties," and that it specify the address to which the materials should be sent. Def.'s Resp. [DE-299] at 1–2. Accordingly, DUHS's Motion for Entry of Protective Order Governing Release of Pathology Materials is ALLOWED.

## II. CONCLUSION

For the reasons set forth above, Defendant's Motion for Leave to File a Motion for Order Governing Release of Pathology Materials [DE-289] is ALLOWED; Defendant's Motion for Order Governing Release of Pathology Materials [DE-291] is ALLOWED; and DUHS's Motion for Protective Order Governing Release of Pathology Materials is ALLOWED [DE-294], and the proposed protective order will be entered concurrently with this order.

SO ORDERED, the 2nd day of November 2017.

Robert B. Jones, Jr.
United States Magistrate Judge